Brockenbrough, J.
1 shall make a few remarks on the question, whether in this case the plaintiff, Samuel Steele, had a right to resort to the summary remedy of a motion to discharge the levy of the execution on his property, and to enter an exoneretur from the process of execution, instead of being driven to the ancient remedy of audita querela, or to a bill in équityTor an injunction ? In the case before the general court, of Smock v. Dade, 5 Rand. 639. this very question was ably and elaborately discussed by Mr. Johnson in favour of the remedy by motion, and by Mr. Stanard on the other side. That court decided, that “ as well from the uniform practice in Virginia, as from the moderir decisions in England, the more summary and less expensive mode of proceeding by motion was proper, and that relief may be given in this way, in all cases where ,by the ancient practice the party would be entitled to an audita querela.” To obviate the objection which was urged, that this summary remedy cannot be resorted to, where the question depends on contested matters of fact, that court further *553 decided, that, on such motion, “the court may in its discretion cause them to be submitted to a jury, and that such course is particularly proper, where the evidence is contradictory, or where it may authorize conflicting inferences, and either of the parties is desirous of referring the facts to that forum.” I do not refer to that decision as an authority in this court; but as I concurred in it, and still think it a correct and valuable decision, I may be excused, I hope, from not readily departing from it.—Blackstone (3 Comm. 406.) says, that “ the indulgence now shewn by the courts in granting a summary relief upon motion, in cases of evident oppression, has almost rendered useless the writ of audita querela, and driven it quite out of practice.” If this was true in 'England, when he wrote, how much more true is it in this country ? I question whether the oldest practitioner in our courts has ever known an instance of a resort to the^audita querela, or whether the writ can be found in any of our records. The opinion of Blackstone is fully supported by the remark of chief justice Eyre, in Lister v. Mundell, 1 Bos. & Pull. 428. who says, it is “the modern practice to interpose in a summary way in all cases where the party would be entitled, to relief on an audita querela A
The circuit court, whose judgment we are now examining, supposed that the injunction was the proper remedy. I do not deny, that that remedy might be resorted to, and in cases where a discovery from the defendant on oath is important, it may be the best remedy; but to make it the only remedy, would disrobe the courts of law of a most beneficial part of their power. “ Every court,” said judge Lyons, in Hendricks v. Dundass, 1 Wash. 54. “ hath a perfect right to watch over the execution of its judgments, and where its process hath been irregularly or fraudulently executed, to quash it, as being the best and speediest mode of doing justice.” How could the former district courts, or the late circuit *554 courts of law, have exercised this salutary jurisdiction, if a party against whom an execution has irregularly issued was compelled to resort to the court of chancery for redress ? The audita querela being obsolete, unless the motion was allowed, the courts of law could give no redress in such cases.
But this question is, I think, settled by the decision of this court in Bullitt’s ex’ors v. Winstons, 1 Munf. 269. In that case, two executions had issued against the property of Littlepage and the Winstons as his sureties, in January 1800, returnable the 1st April following. The plaintiff Harrison, one of the executors of Bullitt, on the 12th March, directed the sheriff to put off the sale of the property until August, holding it subject to the executions, and to suffer it to remain in the possession of Littlepage, or his sureties. A subsequent execution was issued against the goods of the same parties in February 1804. The sureties made a motion to the next district court, to quash the writ, on the ground that the time extended to the principal debtor, and the order to the' sheriff, being given without any agreement on the part of the sureties, operated as a release to them. The district court sustained the motion, and quashed the execution. The judgment was affirmed by the unanimous opinion of this court. It may be remarked, that neither of the counsel for the appellants there (Botts and E. Randolph) took an exception to that mode of proceeding, nor did either of the judges notice such an objection. If it had not been the settled practice of the courts of law to hear such motions, there can be no doubt, that those able counsel would have made the objection. I think the question ought to be put at rest.
As to the question of the competency of David Steele, I shall only say that I concur with my brethren in the opinion, that he is competent.
*555 On the merits, the case is clearly in favour of the appellant. I am of opinion, that the judgment of the circuit superiour court should be reversed, and that of the county court affirmed.
Brooke, J. concurred.
Tucker, P.
The first question in this case, refers itself to the power of a court of law to relieve the surety in a forthcoming bond, who has been absolved by the conduct of the creditor, in giving indulgence to the principal debtor, without the concurrence of the surety. The doctrine as to this matter, was first introduced into the courts of equity, and grew out of the principles of that court, which authorize the surety by bill quia timet to call upon the creditor to proceed against the principal. 7 Taunt. 126. To that court the jurisdiction has been hitherto mainly and wisely confined; and notwithstanding the exceptions, to which 1 shall presently advert, it seems to be well understood, that, as a general principle, the equity of the surety can only be asserted in a court of chancery. It would, indeed, introduce confusion and a total upturning of the established principles of the law, if such matter could be pleaded in discharge of a bond in a court of law; for an obligation under seal can only be discharged by force of an instrument of equal validity, or by payment and satisfaction. Hence, it has been solemnly decided, that it is not any defence at law to an action on a bond against a surety, that by parol agreement time has been given to the principal. Davey v. Prendergrass, 5 Barn. & Ald. 187. 7 Eng. C. L. Rep. 62. To this decision I altogether defer; as I think it would lead to much embarrassment, if the barrier between the two jurisdictions, in regard to this matter, was broken down. It is unnecessary to go into an exposition of these embarrassments here. Suffice it to say, that prudence requires *556 that the boundaries of the two jurisdictions must not be obliterated.
But though the courts, both in England and in this country have deemed this subject a matter peculiarly proper for equitable jurisdiction, yet the principle of relief to the surety, where indulgence has been given by the creditor, has long since been recognized and acted upon in courts of law, in reference to bail. The cases in which they have been relieved are numerous and uniform. Croft v. Johnson, 5 Taunt. 319. Brickwood v. Annis, Id. 614. Gernon v. R. E. Assurance, 6 Id. 379. Willison v. Whitaker, 7 Id. 53. Thomas v. Young, 15 East 617. English v. Darley, 2 Bos. & Pull. 61. Clark v. Devlin, 3 Id. 366. It is new the settled practice to enter an exoneretur of the bail, where it is shewn that the plaintiff has taken a cognovit from the principal, payable by instalments, or has made other arrangements with him, which tie up his hands from proceeding against the principal. But this is done upon the principle, that the recognizance of bail, and the proceedings thereupon by scire facias, constitute part of the process of the court in the original action, and are thus completely, and indeed necessarily, under the control and jurisdiction of the court. “ The jurisdiction is founded upon a general authority in the court to see that an improper use is not made of its own records”—“If it sees, that an improper use is attempted to be made of the security which the party has given (in the course of the process) it immediately interferes.” 5 Barn. & Ald. 187. 2 Leigh 368, 9. But where the proceeding is independent, and forms no part of the pending action, the jurisdiction is not entertained. Thus, though the relief is given to the bail in recognizance against whom the party proceeds by scire facias, yet in an action of debt upon the recognizance, the matter cannot be pleaded in bar; Bulteel v. Jarrold, 8 Price 467. 3 Eng. Excheq. Rep. 422. S. C. And the reason seems to be clear; for though, where *557 the court has possession of the cause, it must act upon it through all its ramifications, yet where a separate and independent process is instituted, there is no necessity or pretext upon which it can assume an equitable jurisdiction.
Such being the well settled doctrine as to bail, it is not perceived, why it should not embrace the case of a surety in a forthcoming bond. That bond grows out of the proceedings in the cause, not less than the bail bond: it is a part of the process in the cause; it is not a distinct, separate, substantive contract, but it is dependent upon, and intimately connected with, the action itself; it is a branch of that action, and forms an integral part of it; it follows the fate of it, and as its existence grew out of it, so it falls to the ground when it falls. If the original judgment is reversed, the forthcoming bond becomes nought: if the original judgment be superseded, a supersedeas to a judgment on the bond is matter of course: if judgment be confessed on the bond, it operates a release of errors in the original judgment: if the execution on which it is taken is quashed, the bond is quashed also: if it be returned and filed, it has the force of a judgment, and execution may be awarded upon it, on a summary motion, instead of a regular action: and lastly, if the bond is irregularly taken, it may be quashed upon motion of either party. It is, indeed, not possible to conceive of a union more intimate and entire, than that which subsists between the forthcoming bond and the action in which it is taken; and every argument in favour of the exercise of jurisdiction in behalf of bail, applies with full force, I think, to the case of the surety in a forthcoming bond. In both cases, the court has possession of the cause, and in both, ought to exercise a like jurisdiction over all its ramifications. This jurisdiction is exercised by motion, or rule ; and instances are not wanting in the practice of our courts, of this mode of proceeding. Thus, if the surety in the *558 bond has paid or otherwise discharged the debt; if he has been excused from delivery of the property by the operation of an injunction or supersedeas, Wilson v. Stevenson’s adm'r, 2 Call 213. Rucker v. Harrison, 6 Munf. 181. or if the principal’s property is,taken and released, Bullitt’s ex’ors v. Winstons, 1 Munf. 209. the surety may have relief by motion, upon which the whole matter is gone into (as was done in the case last cited) and decided by the court, with or without the intervention of a jury, at its discretion. I am, therefore, of opinion with the county court upon the question of jurisdiction.
As to David Steele’s competency: I think he was a competent witness. The motion was for an exoneretur only as to the surety. The judgment could not, therefore, be for an exoneretur as to him.' And, indeed, his testimony, though it amply proves an arrangement which exonerated the surety, by no means-proves a satisfaction of the judgment which discharged himself. Unless, therefore, the idea of the counsel be correct, that the discharge of the surety would operate the discharge of the principal also, there can be no foundation for the opinion, that David Steele was interested in giving the testimony which went to exonerate Samuel. But it is not conceived to be true, that the exoneretur of one party, judicially pronounced, is a necessary release of all others, upon the principle that a release to one enures to all; for if this were so, then in all cases where the surety is discharged by the creditor’s conduct, the principal would be discharged also, which cannot be pretended. Where, as in case, of a forthcoming bond, which is always joint and several, one party is absolved by any other means than what the law deems a release, the right to recover is not impaired as to the rest. And, in this case, nothing I think can be more clear, than that an execution may issue on the forthcoming bond, with a direction that it shall not be levied upon Samuel Steele. This is precisely the course which would have *559 been the consequence, if he had. obtained his absolution by application to a court of equity. As to the objection, that David would be liable to Samuel for costs &c. non constat that they will accrue; for if Samuel pays without execution, they will not; and the bare possibility of such a contingent liability is not sufficient to disqualify a witness. 2 Stark. Law Ev. part 4. 744-6.
Then, as to the merits: the county court, who had the witnesses before it, after hearing the evidence of both parties, was of opinion, that a compromise and adjustment was made between the creditor and principal, without the surety’s knowledge or consent, by which the creditor agreed, for a sufficient consideration, to receive the sum of 250 dollars in discharge of the execution, to be paid in certain instalments; and an exoneretur was entered accordingly. What was the evidence before the county court we know not, and cannot know judicially, as there is no exception. 4 Rand. 189. We must, therefore, take it for granted, that it was right as to the facts; and if so, the conclusion of the law is inevitable. If, indeed, David Steele's testimony had been incompetent, the judgment must have been reversed, as it might be presumed to have been founded, in part, upon his testimony. But as he is deemed to have been a competent witness, no such difficulty exists.
Upon the whole, I think the judgment of the circuit superiour court should be reversed, and that of the county court affirmed.
Judgment affirmed.